083061.0347(207)                    RMC:lab                              #397

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **STATE AUTOMOBILE MUTUAL** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **WILDBERRY PANCAKES & CAFÉ III,** | ) |
| **Inc., an Illinois corporation, DAISY** | ) |
| **GABRIEL, JASMINE SAADEH, JADE** | ) |
| **VALLEJO, and JIHAD ABDALLAH,** | ) |
| | ) |
| **Defendants.** | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Now comes the Plaintiff, State Automobile Mutual Insurance Company, by its attorney, Robert Marc Chemers of Pretzel & Stouffer, Chartered, and for its Complaint for Declaratory Judgment against the Defendants, Wildberry Pancakes & Café III, Inc., an Illinois corporation, Daisy Gabriel, Jasmine Saadeh, Jade Vallejo and Jihad Abdallah, alleges the following:

**JURISDICTION**

1.      The jurisdiction of this Court is premised upon 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, in this action seeking a declaration of no insurance coverage.

**VENUE**

2. Venue is premised upon 28 U.S.C. § 1391 as the Defendants are residents of this District and the transaction occurred in this District.

**THE PARTIES**

3. State Automobile Mutual Insurance Company ("State Auto") is an Ohio insurance corporation, which maintains its principal place of business in Columbus, Ohio, and which at all times herein relevant was licensed to and which did transact insurance business in the State of Illinois and elsewhere.

4. Wildberry Pancakes & Café III, Inc. ("Wildberry" or "the Insured") is an Illinois corporation with its principal place of business in Chicago, Illinois.

5. Daisy Gabriel ("Gabriel"), Jasmine Saadeh ("Saadeh"), Jade Vallejo ("Vallejo") and Jihad Abdallah ("Abdallah") (collectively "the Claimants") are individuals who are citizens and residents of the State of Illinois. The Claimants and each of them have been joined herein as defendants to the extent that they are interested, and State Auto seeks no relief from any or all of the Claimants. If a Claimant agrees to be bound by the judgment or order entered in this action, State Auto will seek to dismiss that Claimant as a defendant.

**THE STATE AUTO POLICIES**

6. State Auto issued its policy of insurance numbered 10044842CB to Wildberry as named insured. The policy provided for Businessowners Liability Insurance on a primary basis for the effective period of October 20, 2020 to October20,2021. A certified true and correct copy of the State Auto policy is attached hereto, made a part

2

hereof and is marked as Pleading Exhibit A. The policy includes an Employment Practices Liability endorsement.

7.      State Auto issued its policy of insurance numbered 10044846CU to Wildberry as named insured. The policy provided for Commercial Umbrella Liability Insurance on an umbrella basis for the effective period of October 20, 2020 to October 20, 2021. A certified true and correct copy of the Umbrella policy is attached hereto, made a part hereof and is marked as Pleading Exhibit B.

## THE UNDERLYING LITIGATION

8.      The Claimants filed a Complaint against Wildberry in the United States District Court for the Northern District of Illinois, Eastern Division, under Cause No. 21 C 3442. A true and correct copy of the aforesaid Complaint is attached hereto, made a part hereof and is marked as Pleading Exhibit C.

9.      The Claimants seek damages from Wildberry for its alleged violations of the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), Illinois Wage Payment and Collection Act ("IWPCA"), and the Chicago Minimum Wage Ordinance ("CMWO") on a collective and class action basis. The Claimants are former employees of Wildberry as Gabriel alleges that she was employed as a server from October 2018 through June 27, 2020; Saadeh alleges that she was employed as a server from May 2017 through September 2020; Vallejo alleges that she was employed as a server from 2009 through June 2020; and Abdallah alleges that he was employed as a barista from 2013 through 2018, and each was employed at the Prudential Plaza

location operated by Wildberry in Chicago, Illinois, all of which more fully appears in Pleading Exhibit C attached hereto.

10.     In their seven-count Complaint against Wildberry, the Claimants seek damages for alleged lack of notice for tip credit in violation of the FLSA (Count I), damages for unpaid hours worked in excess of 40 hours in violation of the FLSA, IMWL and CMWO (Count II), damages for unpaid hours in violation of the IWPCA (Count III), damages for violation of the FLSA, IMWL and CMWO for not being paid for sidework (Count IV), damages for maintenance of an unlawful tip pool in violation of the FLSA, IMWL and CMWO (Count V), damages for unlawful deductions for customer walkouts, mistaken orders and uniforms in violation of the FLSA, IMWL and CMWO (Count VI), and damages for failure to pay minimum wage in violation of the CMWO (Count VII), all of which more fully appears in their Complaint, Pleading Exhibit C attached hereto.

**PROVISIONS OF THE STATE AUTO POLICIES**

11.     The primary State Auto policy provides in its Insuring Agreement for "bodily injury" and "property damage" as follows:

**1.      Business Liability**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our

4

discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the

offense was committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage"' after the end of the policy period.

12.    The primary State Auto policy provides in its Insuring Agreement for "personal and advertising injury" as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

**a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

**(1)**    The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

6

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

**c.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

13.     The primary State Auto policy defines the terms used in the aforesaid insuring agreements as follows:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \* \* \*

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \* \*

"Property damage" means:

a.     Physical injury to tangible property, including all resulting loss of use that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \* \* \*

"Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

b.     Malicious prosecution;

c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.     Oral or written publication, in any manner, of material that violates a person's right of privacy;

8

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

14. The aforesaid policy includes an Employment-Related Practices Exclusion which provides as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II** – **Liability**:

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraph **(a), (b)** or **(c)** above is directed.

This exclusion applies:

9

**(1)**     Whether the injury-causing event described in Paragraph **(a),** **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)**     Whether the insured may be liable as an employer or in any other capacity; and

**(3)**     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

15.     The State Auto Umbrella policy provides in its Insuring Agreement as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**     **Insuring Agreement**

**a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

**(1)**     The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

**(2)**     Our right and duty to defend ends when we have used

10

up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

**c.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

16. The State Auto primary policy in its Employment Practices Liability Endorsement ("EPL Endorsement") includes an Insuring Agreement which provides as follows:

11

"We" shall pay those "losses" arising out of an "insured's" "wrongful employment act"… against "your" "employees", "recognized volunteers" and applicants for employment to which this insurance applies… A "claim" or "suit" for a "wrongful employment act" must be first made against "you" during the "EPL coverage period" or Extended Reporting Periods (if applicable) and reported to "us" pursuant to the terms of this EPL Coverage.

17.     The EPL Endorsement defines the term "wrongful employment act" as follows:

1.      Wrongful dismissal, discharge or termination (either actual or constructive), including breach of an implied contract;

2.      Harassment or coercion (including sexual harassment, whether quid pro quo, hostile work environment or otherwise);

3.      Discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

4.      "Retaliation" (including lockouts);

5.      Employment-related misrepresentation(s) to "your" "employee" or applicant for employment with "you";

6.      Employment-related libel, slander, humiliation, mental anguish, infliction of emotional distress, defamation, or invasion of privacy;

7.      Wrongful failure to employ or promote;

8.      Wrongful deprivation of career opportunity, wrongful demotion or negligent "employee" evaluation, including the giving of negative or defamatory statements in connection with an "employee" reference;

9.      Wrongful discipline;

10.     Failure to provide or enforce adequate or consistent corporate policies and procedures relating to any "wrongful employment act";

11. Negligent supervision or hiring by an insured, relating to any of the above;

12. Violation of an individual's civil rights relating to any of the above.

13. "Third party violations", but only if coverage for "third party violations" is shown on the Supplemental Declarations.

18. The EPL Endorsement includes an exclusion for violation of the FLSA or "any similar federal, state, local or * * * common law" and specifically provides in EPL Endorsement Section II., F., as follows:

This insurance does not apply to:

Any liability for violation(s) of any of the responsibilities, obligations or duties imposed by… the Fair Labor Standards Act (except the Equal Pay Act)… or any similar federal, state, local or foreign statutory law or common law… [including] any and all "claims" and "suits" which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to… the refusal, failure or inability of any "insured(s)" to pay wages or overtime pay for service rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion); [or] improper deductions from pay taken by any "insured(s)" from any "employee(s)".

**TENDER OF DEFENSE**

19. Wildberry tendered its defense to State Auto, and State Auto refused to accept that tender for the reasons stated herein.

**COUNT I**
**(DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND PRIMARY POLICY)**

20. State Auto adopts and repeats the allegations of ¶¶ 1 through 13 and 19 as and for ¶ 20 hereof as though the same were fully set forth herein.

13

21.     While the primary State Auto policy, Pleading Exhibit A, extends coverage to an insured for "bodily injury," "property damage," and "personal and advertising injury," as defined therein, the claims in the underlying action by the Claimants are not covered by the policy of insurance.

22.     State Auto contends that it has no duty or obligation to defend Wildberry in connection with the claims made against it by the Claimants for one or more or all of the following reasons:

     (a)    That the Complaint does not allege "bodily injury" as defined by the policy of insurance.

     (b)    That the Complaint does not allege "property damage" as defined by the policy of insurance.

     (c)    That the Complaint does not allege "personal and advertising injury" as defined by the policy of insurance.

     (d)    That the Complaint does not allege an "occurrence" as defined by the policy of insurance as only intentional and non-accidental conduct is alleged, all of which occurred prior to the inception of the policy on October 20, 2020.

     (e)    That the policy issued to Wildberry does not cover claims for alleged violations of the FLSA, IMWL, IWPCA, and the CMWO

     (f)    That the policy issued to Wildberry does not cover claims for "bodily injury," "property damage," or "personal and

advertising injury" arising out of employment-related practices, and all of the conduct complained of by the Claimants was in connection with employment-related practices.

23. The above contentions of State Auto are, on information and belief, denied by Wildberry which, in turn, contends that Wildberry is entitled to coverage under the State Auto primary policy of insurance. State Auto, in turn, denies, the contrary contentions of Wildberry and each of them.

24. By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms and provisions of 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein, and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

**COUNT II**
**(DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND EPL ENDORSEMENT)**

25. State Auto adopts and repeats the allegations of ¶¶ 1 through 10 and 16 through 19 as and for ¶ 25 hereof as though the same were fully set forth herein.

26. While the EPL Endorsement to the State Auto primary policy, Pleading Exhibit A, extends coverage to an insured for a "wrongful employment act," as defined

therein, the claims in the underlying action by the Claimants are not covered by the EPL Endorsement to the policy of insurance as no "wrongful employment act" is alleged.

27.     State Auto contends that it has no duty or obligation under the EPL Endorsement to defend Wildberry in connection with the claims made against it by the Claimants for one or more or all of the following reasons:

(a)     That the Complaint in each of its counts does not allege a "wrongful employment act" as defined by the EPL Endorsement to the policy of insurance.

(b)     That the Complaint alleges a failure to pay all hours worked, failure to pay minimum wage, operating an unlawful tip pool, and unlawful retention of tips in violation of the FLSA and similar state statutes (IMWL and IWPCA) and a municipal ordinance (CMWO) all of which is excluded by the EPL Endorsement, Section II., F.

28.     The above contentions of State Auto are, on information and belief, denied by Wildberry which, in turn, contends that Wildberry is entitled to coverage under the EPL Endorsement to the State Auto primary policy. State Auto, in turn, denies, the contrary contentions of Wildberry and each of them.

29.     By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms and provisions of 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties

hereto under the terms and provisions of the EPL Endorsement to the policy of insurance referred to herein, and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

**COUNT III**
**(DECLARATORY JUDGMENT RE: NO DUTY TO DEFEND UMBRELLA POLICY)**

30. State Auto adopts and repeats the allegations of ¶¶ 1 through 10, 15 and 19 as and for ¶ 30 hereof as though the same were fully set forth herein.

31. While the State Auto Umbrella policy, Pleading Exhibit B, extends coverage to an insured for "bodily injury," "property damage," and "personal and advertising injury," as defined therein, the claims in the underlying action by the Claimants are not covered by the Umbrella policy of insurance.

32. State Auto contends that it has no duty or obligation to defend Wildberry in connection with the claims made against it by the Claimants for one or more or all of the following reasons:

(a) That the Complaint does not allege "bodily injury" as defined by the Umbrella policy of insurance.

(b) That the Complaint does not allege "property damage" as defined by the Umbrella policy of insurance.

(c) That the Complaint does not allege "personal and advertising injury" as defined by the Umbrella policy of insurance.

(d) That the Complaint does not allege an "occurrence" as defined by the policy of insurance as only intentional and

17

non-accidental conduct is alleged, all of which occurred prior to the inception of the policy on October 20, 2020.

(e)     That the policy issued to Wildberry does not cover claims for alleged violations of the FLSA, IMWL, IWPCA, and the CMWO

(f)     That the policy issued to Wildberry does not cover claims for "bodily injury," "property damage," or "personal and advertising injury" arising out of employment-related practices, and all of the conduct complained of by the Claimants was in connection with employment-related practices.

33.     The above contentions of State Auto are, on information and belief, denied by Wildberry which, in turn, contends that Wildberry is entitled to coverage under the State Auto Umbrella policy of insurance. State Auto, in turn, denies, the contrary contentions of Wildberry and each of them.

34.     By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms and provisions of 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the Umbrella policy of insurance referred to herein, and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

### PRAYERS FOR RELIEF

**WHEREFORE**, the Plaintiff, State Automobile Mutual Insurance Company, prays that this Court enters judgment finding and declaring the rights of the parties as follows:

### AS TO COUNT I:

A.    That State Automobile Mutual Insurance Company has no duty or obligation to provide a defense to Wildberry Pancakes & Café III, Inc. for the action filed in the United States District Court for the Northern District of Illinois, Eastern Division, under Cause No. 21 C 3442 under its Businessowners Liability policy of insurance numbered 10044842CB.

B.    That the Court grant State Automobile Mutual Insurance Company such other and further relief as the Court deems fit and just under the circumstances.

C.    That State Automobile Mutual Insurance Company be awarded and have and recover its just and reasonable costs incurred herein and have execution issue therefor.

### AS TO COUNT II:

A.    That State Automobile Mutual Insurance Company has no duty or obligation to provide a defense to Wildberry Pancakes & Café III, Inc. for the action filed in the United States District Court for the Northern District of Illinois, Eastern Division, under Cause No. 21 C

3442, under the Employment Practices Liability Endorsement to its Businessowners Liability policy of insurance numbered 10044842CB.

B.    That the Court grant State Automobile Mutual Insurance Company such other and further relief as the Court deems fit and just under the circumstances.

C.    That State Automobile Mutual Insurance Company be awarded and have and recover its just and reasonable costs incurred herein and have execution issue therefor.

### AS TO COUNT III:

A.    That State Automobile Mutual Insurance Company has no duty or obligation to provide a defense to Wildberry Pancakes & Café III, Inc. for the action filed in the United States District Court for the Northern District of Illinois, Eastern Division, under Cause No. 21 C 3442 under its Umbrella Liability policy of insurance numbered 10044846CU.

B.    That the Court grant State Automobile Mutual Insurance Company such other and further relief as the Court deems fit and just under the circumstances.

C.    That State Automobile Mutual Insurance Company be awarded and have and recover its just and reasonable costs incurred herein and have execution issue therefor.

Respectfully submitted:


/s/  *Robert Marc Chemers*
Robert Marc Chemers
Bar Number: 0431508
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606
Telephone:      (312) 578-7548
Fax:              (312) 346-8242
E-Mail:  rchemers@pretzelstouffer.com